# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| TALESHA JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:22-CV-00283-MHT-SMD |
| ) | (WO) |
| ALFA MUTUAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on November 26, 2024, wherein the following proceedings were held and actions taken:

1. <u>PARTIES AND TRIAL COUNSEL</u>:

   (a)   Plaintiff Talesha Jordan

   Trial Counsel: Adam M. Porter

   **ADAM M. PORTER, LLC**
   2301 Morris Avenue, Suite 102
   Birmingham, Alabama 35203

   (b)   Defendant Alfa Mutual Insurance Company

   Trial Counsel: Lynlee Wells Palmer and Yvonne N. Maddalena

   **JACKSON LEWIS P.C.**
   Synovus Center
   800 Shades Creek Parkway, Suite 870
   Birmingham, Alabama 35209

COUNSEL APPEARING AT PRETRIAL HEARING:

Adam Porter for plaintiff and Lynlee Wells Palmer for defendant.

2. JURISDICTION AND VENUE:

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as plaintiff asserts claim of discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. The Venue is proper and is uncontested by the parties.

3. PLEADINGS:

The following pleadings and amendments were allowed:

(a) Plaintiff's Complaint filed May 10, 2022 [Doc. 1];

(b) Plaintiff's First Amended Complaint filed December 12, 2022 [Doc. 9]; and

(c) Defendant's Answer to Amended Complaint filed January 19, 2023 [Doc. 15].

4. CONTENTIONS OF THE PARTIES:

(a) Plaintiff:

Plaintiff's Factual Claims

Shortly after Susan Baugh (Caucasian) became supervisor of the billing department in January of 2019, she promoted three Caucasian Billing Representatives in the department to the newly-created position of Billing Analyst

without posting the positions or giving Plaintiff and other department employees an opportunity to be considered.

In April of 2019, Plaintiff complained to Baugh and her supervisor, Kevin Lawrence (Caucasian), that Baugh was discriminating against Plaintiff and the other employees in the department by having to take more incoming phone calls than their white counterparts, as well as being denied training given to their white counterparts.

On May 8, 2019, Baugh gave Plaintiff a demonstrably unfounded disciplinary action ("supervisor's report") and suspended her for five days.  This was the first disciplinary action Plaintiff had ever received in her thirteen years of employment. Baugh gave no employees other than Plaintiff a "supervisor's report" in 2019 or 2020.

On September 27, 2019, Plaintiff filed her first EEOC charge against Defendant, asserting that she and the other Black employees in the department were being discrimination against due to race by Baugh with respect to training and having to handle more customer phone calls.  Baugh began to single Plaintiff out about errors commonly made by others in the department.  This was observed by Plaintiff's co-workers.

In September of 2019, Baugh promoted three more Billing Representatives to Billing Analyst, again without posting the positions.  This time she promoted two Caucasians and one African-American, Tameka Sharpe. Despite the promotion,

3

Sharpe felt that Baugh favored the white employees in the department over the Black employees.

In November of 2019, Plaintiff received a bonus that was lower than usual, and she told Baugh she felt that it was retaliation for her EEOC charge.

On March 5, 2020, Plaintiff filed her second EEOC charge against Defendant, alleging that Baugh was continuing to discriminate against her due to her race and retaliated against her for her previous charge in the ingoing imposition on her and the other Black employees of taking more phone calls, being passed over again for promotion to Billing Analyst, and in the lowered performance evaluation, which caused Plaintiff to have a lower bonus.

On July 21, 2020, Baugh gave Plaintiff another disciplinary action (again, a supervisor's report) and again suspended her without pay for five days.  Baugh was aware of Plaintiff's second EEOC charge at the time.  The disciplinary action was based on unfounded claims, including a supposed "random" audit of the work tickets of all twelve employees working in the department.  Of the "randomly selected" tickets for audit, 75% of them came from one employee: Plaintiff.  Further, Plaintiff had not failed to properly process the tickets. Plaintiff told Baugh and Baugh's supervisor, Lawrence, she felt that she was being "discriminated and retaliated against" for her EEOC charges and told them that she was being "retaliated against."

4

Tyler Harris (Caucasian) filled in for Plaintiff while she was out on suspension. Baugh had directed Plaintiff in June to train Harris in her job duties.

On August 4, 2020, Baugh terminated Plaintiff. Plaintiff was the first employee Baugh had ever terminated. The reasons given by Baugh for terminating Plaintiff are demonstrably unfounded.

Plaintiff's Legal Claims

Plaintiff claims that Defendant terminated her because of her race and/or in retaliation for her protected conduct in opposing racial discrimination both internally and in filing EEOC charges. Her race claim is brought under 42 U.S.C. §1981. Her retaliation claim is brought under Title VII of the Civil Rights Act of 1964 and §1981.

With respect to her race discrimination claim, Plaintiff has ample evidence proving that her race was a motivating factor in Baugh's decision to terminate her. From the time she took over the billing department, Baugh engaged in a pattern of discriminating against Plaintiff and other Black employees in favor of white employees, requiring them to take more phone calls, denying them training, and passing them over for promotions. Baugh's discriminatory treatment of Black employees culminated in a demonstrably false reason for terminating Plaintiff.

With respect to her retaliation claim, Plaintiff continually complained about race discrimination (and then retaliation) from Baugh internally and to the EEOC

from April of 2019 until just a few weeks before she was terminated for, again, demonstrably unfounded reasons.

Plaintiff's Damages and Other Relief

Plaintiff seeks an award of back-pay, along with compensatory and punitive damages in an amount to be determined by the jury. Plaintiff also seeks reinstatement into the position she would occupy in the absence of her discriminatory/ retaliatory termination, and/or front-pay to the extent reinstatement is impracticable. Plaintiff is entitled to punitive damages because Defendant and/or its employees acting in a high level managerial capacity acted with either malice or with reckless indifference toward Plaintiff's federally protected rights. Finally, Plaintiff seeks an award of her reasonable attorney's fees and costs pursuant to Title VII and 42 U.S.C. §1988.

(b)     Defendant:

Defendant denies that it discriminated and/or retaliated against plaintiff in any way. Plaintiff acted improperly toward a co-worker and, according to another co-worker, made threats of "tear[ing] someone's ass up" and engaged in other disruptive activity in the workplace. Defendant correctly disciplined Plaintiff for these actions. Thereafter, Plaintiff failed to follow multiple established procedures for her department (including one violation committed forty-six times in a single month), resulting in a second disciplinary action and a warning that further violations

would result in the termination of her employment. Mere weeks after this final warning, Plaintiff again violated a departmental procedure, this time causing a policyholder's account to incorrectly reflect a negative balance. It was Plaintiff's repeated failure to follow departmental procedures, and not her race or protected complaints, that prompted Defendant to terminate her employment. These legitimate, non-discriminatory and non-retaliatory reasons cannot be established to be pretextual. Defendant denies that Plaintiff is entitled to any of the damages she seeks in this lawsuit.

Defendant incorporates by reference its Answer to the Amended Complaint and further submits that plaintiff's claims fail for all the reasons raised in its Motion for Summary Judgment, along with the Brief, Evidentiary Materials and Reply Brief filed in support thereof.

5.     STIPULATIONS BY AND BETWEEN THE PARTIES:

1.     Talesha Jordan (African-American) worked for Alfa Mutual Insurance Company in Montgomery, Alabama from June 20, 2006 through August 4, 2020.

2.     In January of 2019, Ms. Jordan worked as a Billing Representative in Alfa's Billing Department.  At that time, Susan Baugh (Caucasian) became the Supervisor of the Department and Ms. Jordan's immediate supervisor.  Ms. Baugh was Ms. Jordan's supervisor from that time until the termination of Ms. Jordan's employment.

3. Both Billing Representatives and Billing Analysts reported to Ms. Baugh. Ms. Baugh, in turn, reported to Alfa's Vice President of Document and Payment Strategies, Kevin Lawrence (Caucasian).

4. On May 8, 2019, Ms. Baugh issued Ms. Jordan a "Supervisor's Report" (disciplinary action).

5. On September 27, 2019, Ms. Jordan filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

6. On November 25, 2019, Ms. Baugh gave Ms. Jordan a performance evaluation.

7. On March 5, 2020, Ms. Jordan filed a second Charge of Discrimination with the EEOC.

8. On July 21, 2020, Ms. Baugh issued Ms. Jordan a second Supervisor's Report and suspended her for five (5) days.

9. On August 4, 2020, Ms. Baugh terminated Ms. Jordan's employment with Alfa.

10. On February 1, 2021, Plaintiff filed a third Charge of Discrimination with the EEOC, which she amended on July 22, 2021.

\*\*\*

It is ORDERED that:

(1) The jury selection and trial of this cause, which is to last three days, are set for January 6, 2025, at 10:00 a.m. at the United States Courthouse in Montgomery, Alabama.

(2) A trial docket will be mailed to counsel for each party approximately two weeks prior to the start of the trial term.

(3) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and two extra copies of each photostatically reproducible exhibit.  Any publication of exhibits to the jury will be done through use of the ELMO in the courtroom, and no exhibit is to be shown or published to the jury without it being admitted into evidence.  Any exhibits which the parties wish to use in their opening statements can be shown to the jury if the parties jointly stipulate that the exhibit is admitted into evidence in

advance of trial. With respect to demonstratives, they may be used in voir dire, opening statements, examination of witnesses, and in closing statements if (a) they accurately reflect the evidence, and (b) they have been shown to opposing counsel in advance of trial such that opposing counsel has sufficient time to review the demonstrative and timely raise any objections to the court with respect to the use thereof.

(4) Trial briefs ((a) summarizing the evidence to be presented at trial, (b) setting forth the elements of each and every claim and defense at issue and how the evidence does or does not satisfy those elements, and (c) addressing any evidentiary issues that may arise at trial) are required to be filed by December 23, 2024.

(5) All deadlines not otherwise affected by this order will remain as set forth in the uniform scheduling order (Doc. 18, as modified).

(6) All understandings, agreements, deadlines, and stipulations contained in this pretrial order shall be binding on all parties unless this order be hereafter

modified by order of the court.

DONE, this the 27th day of November, 2024.

                                              /s/ Myron H. Thompson
                                       **UNITED STATES DISTRICT JUDGE**